IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARTURO LEDESMA, JR.,<br><br>Defendant. | Case No. 3:18-CR-30103-NJR-7 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Response to the Government's Supplemental Notice of Expert Witnesses filed by Defendant Arturo Ledesma, Jr. (Doc. 528). On February 7, 2022, the Government filed a Supplemental Notice of Expert Witnesses to include Special Agent ("SA") Richard Fennern as an expert in the field of historical cell site analysis due to another witness's unavailability (Doc. 486). Ledesma moved for leave to respond to the supplemental notice, which was granted (Docs. 527, 530). Ledesma's response is essentially a motion to exclude SA Fennern's expert testimony pursuant to Federal Rules of Evidence 702 and 703.

## LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum*

*Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

> Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under this rule, expert testimony must be both relevant to assisting the trier of fact and sufficiently reliable. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).

The district court is the gatekeeper with respect to the screening of expert testimony. *Id.* The "key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, an expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). "The critical inquiry is whether there is a connection between the data employed and the opinion offered." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (quotation omitted).

## DISCUSSION

In its initial notice of expert witness (Doc. 465), the Government stated its intent to call SA Greg Catey of the Federal Bureau of Investigation ("FBI") as an expert witness at trial. Due to his unavailability, the Government filed a supplemental notice of its intent to substitute SA Richard Fennern of the FBI as an expert witness in the field of historical cell site analysis (Doc. 486). SA Fennern has worked on the Cellular Analysis Survey

Team ("CAST") since November 2018 specializing in call detail record analysis and location information (Doc. 486-1).

First, Ledesma argues that SA Fennern's testimony should not be admissible because such testimony related to historical cell site analysis is unreliable. Ledesma cites to concerns raised by the Sixth Circuit regarding the methodology used by federal law enforcement agencies to estimate cell phone location based on analysis of historical cell site location data. Ledesma does recognize, however, that the Seventh Circuit has allowed admission of cell site location testimony as reliable evidence. The Government contends that cell site analysis is a well-established and accepted law enforcement tool and FBI CAST agents have routinely been recognized as qualified experts in this field.

As both Ledesma and the Government acknowledge, the Seventh Circuit has allowed admission of cell site location testimony, because of its sufficient reliability that a phone was in a general area. *See United States v. Hill,* 818 F.3d 289, 298 (7th Cir. 2016) ("Historical cell-site analysis can show with sufficient reliability that a phone was in a general area, especially in a well-populated one. It shows the cell sites with which the person's cell phone connected, and the science is well understood."). As such, Ledesma fails to convince the Court that cell site analysis is unreliable as a general matter.

Ledesma next argues that even if the Court finds the cell site analysis to be generally reliable, such expert testimony should not be admitted without limitation. Ledesma suggests that SA Fennern's proposed opinion is unsupported by the available data, and his report is not sufficiently reliable under Rule 702. Ledesma proposes that the expert testimony be limited to "more closely comport with the available data."

Specifically, Ledesma argues that SA Fennern's proposed opinion is unsupported as his report does not explain in more detail the realities of how cell phones communicate with cell towers of a cellular network and the many factors that can influence connection of a cell site to a phone. Ledesma also contends that, because the Government does not know the exact location or time of the drug transaction, the data cannot be used to show Ledesma was in the same location as his co-defendants during the alleged transaction. On the other hand, the Government states that SA Fennern's report reflects scientific analysis of cellular data derived from phone company records, and he will explain the limitations regarding the ability to unveil precise locations with such data.

Simply put, the Court rejects Ledesma's characterization of SA Fennern's report and conclusions. Here, the analysis is rooted in scientific or other specialized knowledge regarding cell site location data. Furthermore, SA Fennern's testimony will help the jury to understand the evidence, his report appears to be based on sufficient facts and data of cell phone records, it is the product of reliable principles, and he has reliably applied the principles and methods to the facts of the case. SA Fennern will also be able to explain his conclusions and methodology, including its limitations, during his testimony on direct and cross examination.

Lastly, Ledesma argues that SA Fennern's testimony should be excluded under Federal Rule of Evidence 403, because its probative value is substantially outweighed by the danger of unfair prejudice. The Government, however, contends that SA Fennern's testimony relating to historic cell site analysis is highly relevant to show that the two cellphones used by Ledesma were in the same general location as cellphones used by his

co-defendants during the alleged drug transaction, which will assist the jury to determine Ledesma's involvement in the alleged crimes.

Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, the Court finds that SA Fennern's testimony, regarding the location of Ledesma's cellphone as well as the location of phones used by his co-defendants, is relevant to aid the jury in determining Ledesma's involvement in the alleged criminal conduct. Its probative value is not substantially outweighed by unfair prejudice.

The Court is not convinced that SA Fennern is unqualified, that his expert opinions are unreliable, or that his testimony should be barred under Rule 403. Ledesma may challenge SA Fennern's conclusions through "vigorous cross-examination [and] presentation of contrary evidence" at trial. *Daubert*, 509 U.S. at 596.

## CONCLUSION

For these reasons, the Response to the Government's Supplemental Notice of Expert Witnesses, essentially a motion to exclude expert witness testimony, filed by Defendant Arturo Ledesma, Jr. (Doc. 528) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   April 19, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**